[920 NE2d 344, 892 NYS2d 288]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v COLLIER GILLYARD, Appellant.

Argued October 21, 2009; decided November 23, 2009

**POINTS OF COUNSEL**

*Shearman & Sterling, LLP,* New York City (*Steven F. Molo, Christine A. Meiers, Robert L. Whitener, Michael S. Carucci* and *Mary Runkle* of counsel), and *Office of the Appellate Defender* (*Richard M. Greenberg* and *Rosemary Herbert* of counsel) for appellant. I. The trial court erred in admitting evidence of appellant's uncharged criminal act to show his "familiarity and access" to the tools of the charged crime. (*People v Molineux,* 168 NY 264; *Coleman v People,* 55 NY 81; *Spencer v Texas,* 385 US 554; *People v Rojas,* 97 NY2d 32; *People v Resek,* 3 NY3d 385; *People v Roe,* 74 NY2d 20; *People v Crandall,* 67 NY2d 111; *People v Zackowitz,* 254 NY 192; *People v McKinney,* 24 NY2d 180; *People v Del Vermo,* 192 NY 470.) II. The trial court erred by allowing the prosecutor to argue in summation evidence not

in the record, which undermined appellant's theory of the case. (*Williams v Brooklyn El. R.R. Co.,* 126 NY 96; *People v Ashwal,* 39 NY2d 105; *People v Jones,* 44 NY2d 76; *People v Francis,* 58 AD3d 1015; *People v Collins,* 12 AD3d 33; *People v World,* 157 AD2d 567; *People v Walters,* 251 AD2d 433; *People v Torres,* 223 AD2d 741.) III. The trial court committed reversible error. (*People v Crimmins,* 36 NY2d 230; *People v Alexander,* 94 NY2d 382; *People v Ostrow,* 12 Misc 3d 69; *People v Robinson,* 260 AD2d 508; *Spencer v Texas,* 385 US 554; *People v Vega,* 3 AD3d 239; *People v McKinney,* 24 NY2d 180; *People v Zackowitz,* 254 NY 192.)

*Robert M. Morgenthau, District Attorney,* New York City (*Britta Gilmore* and *David M. Cohn* of counsel), for respondent. I. The court properly exercised its discretion by admitting into evidence a handcuff key recovered from defendant. (*People v Scarola,* 71 NY2d 769; *People v Alvino,* 71 NY2d 233; *People v Carroll,* 95 NY2d 375; *People v Aska,* 91 NY2d 979; *People v Molineux,* 168 NY 264; *People v Rojas,* 97 NY2d 32; *People v Till,* 87 NY2d 835; *People v Tosca,* 98 NY2d 660; *People v Hudy,* 73 NY2d 40; *People v Fiore,* 34 NY2d 81.) II. The prosecutor's challenged summation comment did not deny defendant a fair trial. (*People v Galloway,* 54 NY2d 396; *People v Ashwal,* 39 NY2d 105; *People v Marks,* 6 NY2d 67, 362 US 912; *Darden v Wainwright,* 477 US 168; *People v Massie,* 2 NY3d 179; *People v Melendez,* 55 NY2d 445; *People v Tankleff,* 84 NY2d 992; *People v De Jesus,* 42 NY2d 519; *People v Davis,* 58 NY2d 1102; *People v Rodriguez,* 100 NY2d 30.)

**OPINION OF THE COURT**

Pigott, J.

This case concerns two incidents in which defendant impersonated a police officer. During the first incident, defendant displayed a badge, claimed to be a police officer and demanded that the victim pay him money. When the victim resisted, he pushed the victim against the wall, brandished a pair of handcuffs and threatened to use them. As a result, the victim, accompanied by defendant, withdrew money from an ATM and gave it to defendant.

The second incident occurred about a month later when defendant was driving and pulled alongside a moving taxicab. He displayed a badge and motioned to the cab driver to pull over. When the cab driver complied, defendant and an accomplice approached the cab and acted as if they were conducting a traffic

stop. Wearing a badge around his neck, defendant demanded the cab driver's ID, claiming the cab driver was intoxicated and had hit his vehicle. Two police officers on routine patrol came upon the scene and, finding it suspicious, pulled over. After talking to the cab driver, the officers approached defendant and his accomplice, and asked whether they were carrying badges. When the accomplice leaned forward to reach beneath his seat, the officers removed them from the car. Inside the car, the police recovered two fake badges and a pair of toy handcuffs. Defendant was arrested and charged with robbery in the second degree (Penal Law § 160.10 [1]), grand larceny in the fourth degree (Penal Law § 155.30 [6]) and criminal impersonation in the first and second degrees (Penal Law § 190.26 [1]; § 190.25 [3]), arising out of the two incidents.

Prior to trial, the court granted the People's *Molineux* application to allow testimony regarding defendant's possession of a handcuff key on January 23, 2006—several weeks after the incidents, to show his identity and to prove the fact that he had access to handcuffs. The key was discovered by a corrections officer in a search of defendant at the time he was incarcerated at Riker's Island while awaiting trial on this case. Possession of such a key by a prisoner is a violation of Department of Correction rules, and of Penal Law § 205.20 (1).

In opposition to the People's motion, defense counsel had argued that the evidence was of no relevance to the case and that it was simply being offered to prejudice the jury. The prosecutor argued that it was relevant as it showed defendant "has access to handcuffs" and went to defendant's identity. However, defense counsel was willing to stipulate to identity. At trial, over defense counsel's objections, the court allowed testimony that defendant was found in possession of the handcuff key while at the detention center.

Defendant was convicted of robbery in the second degree (Penal Law § 160.10 [1]), grand larceny in the fourth degree (Penal Law § 155.30 [6]) and criminal impersonation in the first and second degrees (Penal Law § 190.26 [1]; § 190.25 [3]).

Thereafter, defendant made a motion to set aside the verdict arguing that he was deprived of a fair trial by the court's admission of the handcuff key evidence. He also claimed that a statement made by the prosecutor during summation was improper as that evidence was not allowed in by the court during trial. Supreme Court denied the motion finding, among other things,

that the evidence showed that defendant had "access" to the type of weapon or tool alleged to have been used, and that it was admissible to establish the defendant's involvement in the charged crime. In the court's view, the evidence that defendant was familiar with, and had access to, handcuffs corroborated the victims' accounts.

The Appellate Division affirmed holding that the evidence of the handcuff key was properly admitted into evidence to demonstrate defendant's access to and familiarity with handcuffs, which were involved in both crimes (55 AD3d 310 [2008]). In the Appellate Division's view, the lapse of time of the discovery of the key was not so great as to render this evidence excessively remote. Moreover, the court held that its probative value exceeded its prejudicial effect, which was minimized by the court's instructions. The court also considered defendant's arguments concerning the prosecutor's summation and summarily rejected them.

In this Court, defendant argues that Supreme Court erred in admitting evidence of the handcuff key to show "familiarity and access" to the tools of the charged crime. He argues that "familiarity and access" should not be recognized as an exception to the *Molineux* rule.

Long ago, in *People v Molineux* (168 NY 264 [1901]), this Court held that there are instances when evidence of uncharged crimes may be used to prove guilt of the offense charged. We articulated that such evidence may be admitted in circumstances

"when [the evidence] tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; [or] (5) the identity of the person charged with the commission of the crime on trial" (*id.* at 293).

Acknowledging that this list was not exhaustive, we established the rule that evidence of defendant's other crimes is admissible only if probative of some fact at issue other than the defendant's criminal propensity (*see People v Rojas*, 97 NY2d 32, 37-40 [2001]). The rule reflects the importance of an accused being judged only on relevant, probative evidence, rather than on the basis of propensity to commit crime (*see id.* at 36-37). The balancing of probative value against potential prejudice is entrusted to the trial court's discretion (*People v Ventimiglia*, 52 NY2d 350, 359-360 [1981]).

■ We agree with defendant that his familiarity with using handcuff keys has little relevance to the case. During the first incident, although defendant threatened the complainant that he was going to handcuff him, he never used the handcuffs on him. Although the evidence could arguably be relevant to show that he was convincing as a police officer, the complainant, in the first incident, testified that he knew that defendant wasn't a police officer and that he was being "scammed." During the second incident, involving the cab driver, handcuffs were not even involved; the police merely discovered them under the seat of the car during a search. Therefore, the evidence's "limited probative value when compared to its potential for prejudice and the unacceptable danger that the jury might condemn defendant because of his past criminal behavior and associations and not because he is guilty of the offense charged" makes this evidence inadmissible (*People v Richardson*, 137 AD2d 105, 107-108 [3d Dept 1988]).

■ Despite the fact that the key was admitted in error in this case, we find the error harmless. An error may be found harmless where "the proof of defendant's guilt, without reference to the error, is overwhelming" and where there is no "significant probability . . . that the jury would have acquitted the defendant had it not been for the error" (*People v Crimmins*, 36 NY2d 230, 241-242 [1975]). Regarding the first incident, the People presented the complainant's uncontested account of the robbery and his identification of defendant as the perpetrator. That testimony was corroborated by a surveillance video from the ATM vestibule that depicted defendant waiting while the victim withdrew cash.

As it pertains to the second incident, the victim offered a firsthand account of defendant's impersonation of a police officer, including his display of a fake badge and his demand that the driver pull over. The arresting police officer, who observed the fake police stop, testified as to how defendant and his accomplice positioned themselves and their vehicle as if they were police officers. These testimonial accounts were corroborated by the discovery of the fake handcuffs and badges in defendant's vehicle. Thus, proof of defendant's guilt relative to both incidents was overwhelming and there is no significant probability that the verdict would have been different if the court excluded the evidence of the handcuff key.

■ We further find that, although the prosecutor's statement during summation was improper, this single good faith error

was not so prejudicial as to require a mistrial (*see Crimmins*, 36 NY2d at 237). The court issued a curative instruction, reminding the jury that the prosecutor's argument was merely her recollection of the testimony.

The order of the Appellate Division should be affirmed.

Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur; Chief Judge LIPPMAN taking no part.

Order affirmed.